[Cite as *State v. Taylor*, 2023-Ohio-3683.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.     22CA011858 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVID TAYLOR | | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | | CASE No.     21CR103835 |

DECISION AND JOURNAL ENTRY

Dated: October 10, 2023

FLAGG LANZINGER, Judge.

**{¶1}**   David Taylor appeals from the judgment of the Lorain County Court of Common Pleas.  For the following reasons, this Court affirms.

I.

**{¶2}**   A grand jury indicted Mr. Taylor on one count of improperly discharging a firearm into a habitation or school safety zone with two accompanying firearm specifications, one count of carrying a concealed weapon, one of count improperly handling firearms in a motor vehicle, and one count of obstructing official business.  Mr. Taylor pleaded not guilty.  The matter proceeded to a jury trial wherein the following evidence was adduced.

**{¶3}**   On the evening of January 16, 2021, the victim, her boyfriend, and her family, which included children ranging in age from six-months old to sixteen-years old, were enjoying a family night at their home.  Shortly before 10:00 p.m., five gunshots came through the front of the house.  Fortunately, no one was struck.

**{¶4}** About two blocks away, two police officers who were parked in their respective cruisers heard the gunshots. Each officer immediately drove in the direction of the gunshots, although each officer took a different route.

**{¶5}** While driving in the direction of where he thought the gunshots came from, one of the officers observed a vehicle speeding down the road. The officer attempted to stop the vehicle. The vehicle continued speeding and ran through several stop signs and red lights–reaching speeds of over 80 m.p.h.–before coming to a stop after it crashed into a parked vehicle. The driver, who was a juvenile (the "juvenile"), and the passenger, later identified as Mr. Taylor, fled on foot in different directions. The other officer had arrived at this point, so one officer pursued the juvenile on foot, and the other officer pursued Mr. Taylor on foot. Mr. Taylor ran over train tracks and attempted to hide in a wooded area, but the officer located and apprehended him. The other officer apprehended the juvenile. While Mr. Taylor was seated in the back of a police cruiser, he called his mother and told her that no one had shot at a house, and that the police chased their car for no reason.

**{¶6}** The vehicle the juvenile was driving was later identified as Mr. Taylor's mother's vehicle. While searching the vehicle, officers located a 9mm gun on the passenger-side floor. Officers also located five shell casings in the road outside the victim's house. The State presented forensic evidence indicating that the juvenile and Mr. Taylor both tested positive for gunshot residue, and that the shell casings located in the street were consistent with having been fired from the gun located in Mr. Taylor's mother's vehicle.

**{¶7}** Prior to trial, the parties discussed the fact that the juvenile had entered an admission to the charges of failure to comply with an order or signal of a police officer, improperly discharging a firearm into a habitation or school safety zone, and improperly handling firearms in

a motor vehicle in his delinquency proceeding. The juvenile court memorialized the juvenile's admission to the charges in a judgment entry (the "Admission"). The parties also discussed the fact that the juvenile was awaiting his dispositional hearing.[1] Defense counsel expressed that he wanted to review the dispositional hearing transcript from the juvenile's case to see if there was any allocution or exculpatory evidence in favor of Mr. Taylor. The prosecutor indicated that the juvenile's dispositional hearing would not occur until after Mr. Taylor's trial because the State wanted to avoid a situation where the juvenile, facing no further penalty, would take full responsibility for the events. Defense counsel indicated that he would prefer to proceed to trial after the juvenile's dispositional hearing, but stated that he understood the State's position in that regard.

{¶8} At trial, the State proceeded under the theory that Mr. Taylor was guilty as the principal offender or was complicit to the acts of the juvenile as an aider and abettor. After the State's case-in-chief, defense counsel attempted to introduce a certified copy of the Admission "to show the innocence of [Mr. Taylor]." After lengthy discussions on the record and briefing on the issue, the trial court excluded the certified copy of the Admission from evidence. The trial court reasoned, in part, that the Admission simply indicated that the juvenile admitted to the charges, which did not necessarily exculpate Mr. Taylor since the juvenile could have admitted to the charges for a number of reasons. The trial court also reasoned that the Admission was hearsay, and that it did not fall within the Evid.R.804(B)(3) exception to hearsay for statements against interest because there was no corroborating evidence to demonstrate its trustworthiness. After the trial court's ruling, the defense presented no evidence.

---

[1] Throughout the proceedings, the parties referred to the juvenile's admission as a guilty plea, and to his dispositional hearing as a sentencing hearing.

{¶9} The trial court then instructed the jury, which included instructions on complicity, aiding and abetting, and constructive possession. The jury found Mr. Taylor guilty of the charges and accompanying specifications. The trial court sentenced Mr. Taylor accordingly. He now appeals, raising four assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

DEFENDANT DAVID TAYLOR WAS DENIED A MEANINGFUL OPPORTUNITY TO PRESENT A COMPLETE DEFENSE, WHICH WOULD HAVE MATERIALLY ALTERED THE OUTCOME OF THE TR[IAL] WHEN HE WAS DENIED THE OPPORTUNITY TO PRESENT EXCULPATORY EVIDENCE OF CODEFENDANT'S ADMISSION OF THE CHARGES COMMITTED.

{¶10} In his first assignment of error, Mr. Taylor argues that the trial court erred by excluding the certified copy of the Admission from evidence, which deprived him of a meaningful opportunity to present a complete defense. For the following reasons, this Court disagrees.

{¶11} "[A] trial court has broad discretion in the admission or exclusion of evidence and this Court will not disturb a trial court's ruling on the admission of evidence absent an abuse of discretion and material prejudice to the defendant." (Alteration sic.) *State v. Mitchell*, 9th Dist. Medina No. 21CA0071-M, 2022-Ohio-3176, ¶ 30, quoting *Drew v. Marino*, 9th Dist. Summit No. 21458, 2004-Ohio-1071, ¶ 8. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶12} Having reviewed the record, this Court cannot say that the trial court committed reversible error when it excluded the Admission from evidence because Mr. Taylor cannot establish that he suffered material prejudice. *Mitchell* at ¶ 30. Mr. Taylor argues that his trial counsel intended to introduce the Admission as exculpatory evidence to show that the juvenile

admitted under oath that "*he* had handled the firearm, that *he* had shot into the building, and that *he* had taken responsibility." (Emphasis sic.) Mr. Taylor's argument, however, fails to acknowledge the State's theory at trial that–even if Mr. Taylor was not the principal offender–the evidence established his guilt as an aider and abettor. Under R.C. 2923.03(F), an aider and abettor to a crime is subject to the same penalties as the principal offender. As a result, the Admission, even if admitted into evidence, would not have exculpated Mr. Taylor because the jury could have found him guilty under the theory of complicity as an aider and abettor.[2] *See State v. Hurse*, 10th Dist. Franklin No. 14AP-687, 2015-Ohio-2656, ¶ 9-12 (holding that the trial court's exclusion of evidence of a codefendant's conviction did not prejudice the defendant because the jury could have found the defendant guilty of complicity); *see State v. Askew*, 2d Dist. Montgomery No. 20110, 2005-Ohio-4026, ¶ 15 (noting that a codefendant's incriminating statements do not exculpate one who is complicit to the crime). Thus, even assuming without deciding that the trial court erred by excluding the Admission, Mr. Taylor cannot establish that he suffered material prejudice as a result of the trial court's ruling. *Hurse* at ¶ 12. Accordingly, Mr. Taylor's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE STATE [O]F OHIO COMMITTED MISCONDUCT AND PURPOSEFULLY DEPRIVED DEFENDANT OF A MATERIAL WITNESS TO HIS DEFENSE WHEN IT KNOWINGLY MOVED CODEFENDANT'S SENTENCING DATE TO A DATE AFTER TAYLOR'S TRIAL DATE IN ORDER TO DISSUADE CODEFENDANT FROM ENTERING ADMISSIONS OF GUILT AT TAYLOR'S TRIAL.

---

[2] This Court notes that Mr. Taylor has not challenged the sufficiency or manifest weight of the evidence as it relates to his role as either a principal offender or as an aider and abettor.

{¶13} In his second assignment of error, Mr. Taylor argues that the State committed prosecutorial misconduct when it moved the juvenile's dispositional hearing to a date after Mr. Taylor's trial to dissuade the juvenile from testifying on Mr. Taylor's behalf. Mr. Taylor argues that this deprived him of a material witness, which deprived him of a fair trial. For the following reasons, this Court disagrees.

{¶14} As Mr. Taylor acknowledges in his merit brief, his trial counsel did not object when the State indicated that the juvenile's dispositional hearing was moved to a date after Mr. Taylor's trial. As a result, Mr. Taylor is limited to arguing plain error on appeal. *State v. Fortune*, 9th Dist. Wayne No. 19AP0024, 2020-Ohio-3606, ¶ 38 ("If a defendant fails to object to alleged prosecutorial misconduct, he forfeits all but plain error."). Under Crim.R. 52, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "To establish plain error, one must show (1) an error occurred, i.e., a deviation from a legal rule, (2) the error is plain, i.e., an obvious defect in the proceedings, and (3) the error affected a substantial right, i.e., affected the outcome of the proceedings." *State v. Grant*, 9th Dist. Summit No. 29259, 2019-Ohio-3561, ¶ 5, citing *State v. Morgan*, 153 Ohio St.3d 196, 2017-Ohio-7565, ¶ 36. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶15} "In deciding whether a prosecutor's conduct rises to the level of prosecutorial misconduct, a court determines if the prosecutor's actions were improper, and, if so, whether the defendant's substantial rights were actually prejudiced." *State v. Moreland*, 9th Dist. Summit No. 27910, 2016-Ohio-7588, ¶ 22, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). To demonstrate prejudice, "[t]he defendant must show that, but for the prosecutor's misconduct, the trier of fact

would not have convicted him." *Moreland* at ¶ 22. "The touchstone of the analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, ¶ 140, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

{¶16} Here, the prosecutor stated during a pretrial that the delay in the juvenile's dispositional hearing was:

> purposeful * * * to avoid the situation where the juvenile's already sentenced, and then we have the potential where he faces no further penalty, and potentially * * * takes the blame for all this, so the juvenile court is continuing out his sentencing until this case is resolved.

{¶17} During trial, outside the presence of the jury, the juvenile's attorney informed the trial court that the juvenile was still awaiting final disposition. The juvenile's attorney also informed the trial court that, if Mr. Taylor's defense counsel called the juvenile as a witness, the juvenile intended to exercise his Fifth Amendment right to remain silent. The trial court, therefore, determined that "it would be [an] inefficient use of judicial resources" to require the juvenile to appear at Mr. Taylor's trial, and declared him unavailable to testify.

{¶18} On appeal, Mr. Taylor argues that the juvenile "would have likely testified that he was the one who fired the weapon and that [Mr.] Taylor was not complicit in that regard." As a result, he argues, he was denied the opportunity to present a complete defense.

{¶19} As an initial matter, there is no indication that the prosecutor in Mr. Taylor's case was the same prosecutor in the juvenile's case. Thus, any delay in the dispositional hearing would have been requested by a different prosecutor and would have been granted by a different trial judge. This Court is not aware of–nor has Mr. Taylor pointed to–any case law that indicates that a prosecutor can engage in prosecutorial misconduct based upon the actions of a different prosecutor, in a different case, in front of a different trial judge. *See* App.R. 16(A)(7) (requiring appellants to support their arguments with citations to legal authorities).

**{¶20}** Additionally, Mr. Taylor's argument is based upon speculation as to how the juvenile would have testified. While defense counsel proffered the Admission for the record, the juvenile could have admitted to the charges based upon his role as the principal offender, or as an aider and abettor. Mr. Taylor speculates on appeal that the juvenile "would have likely testified that he was the one who fired the weapon and that [Mr.] Taylor was not complicit in that regard." This Court, however, will not engage in speculation as to how the juvenile "would have likely testified" for purposes of determining whether the prosecutor engaged in prosecutorial misconduct. *See Moreland*, 2016-Ohio-7588, at ¶ 29, 34 (rejecting an appellant's claim of prosecutorial misconduct and noting that "this Court will not engage in speculation."); *State v. Chatman*, 10th Dist. Franklin No. 08AP-803, 2009-Ohio-2504, ¶ 55 (noting that, without evidence as to how a witness would have testified, "it is pure speculation to conclude there was prosecutorial misconduct and that prejudice resulted from the same.").

**{¶21}** Even assuming without deciding that the prosecutor in Mr. Taylor's case engaged in misconduct, this Court cannot say that, but for the prosecutor's misconduct, the trier of fact would not have convicted Mr. Taylor. As set forth in this Court's recitation of the facts above, the State presented evidence indicating that: (1) the juvenile was driving Mr. Taylor's mother's vehicle and Mr. Taylor was in the front passenger's seat; (2) after the vehicle crashed into a parked vehicle, Mr. Taylor fled from officers on foot and attempted to hide in a wooded area before an officer apprehended him; (3) officers located a gun on the passenger-side floor of the vehicle; (4) Mr. Taylor testified positive for gunshot residue; and (5) the shell casings located from the street in front of the victim's house were consistent with having been fired from the gun located in the vehicle. While Mr. Taylor speculates on appeal that the juvenile's testimony would have been exculpatory, this Court disagrees in light of this evidence.

{¶22} Based upon the foregoing, this Court concludes that Mr. Taylor has failed to establish that, but for the prosecutor's alleged misconduct, the jury would not have convicted him. *See Moreland*, 2016-Ohio-7588, at ¶ 22. As a result, Mr. Taylor has failed to establish prosecutorial misconduct. *See id.* Mr. Taylor's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHICH MATERIALLY DEPRIVED HIM OF A FAIR TRIAL WHEN[] COUNSEL FAILED TO OBJECT TO THE STATE'S MANIPULATION OF SENTENCING SCHEDULE IN ORDER TO DEPRIVE HIM OF A MATERIAL WITNESS AND WHEN DEFENSE COUNSEL PREJUDICED THE JURY TO TAYLOR THROUGH HIS DAMAGING CLOSING ARGUMENTS.

{¶23} In his third assignment of error, Mr. Taylor argues that his trial counsel rendered ineffective assistance. For the following reasons, this Court disagrees.

{¶24} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, Mr. Taylor must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, Mr. Taylor must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138. As the Ohio Supreme Court has acknowledged, "[a] defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), citing *Strickland* at 697.

{¶25}  Mr. Taylor argues that his trial counsel rendered ineffective assistance for several reasons, including by: (1) failing to object to the State delaying the dispositional hearing of the juvenile, which effectively barred the juvenile from testifying on his behalf; (2) making comments about partisanship and race relations during closing arguments instead of focusing on the weaknesses in the State's case; and (3) suggesting his guilt during closing arguments by stating that the incident could have occurred by "some reckless teenager who's got a new fancy toy, I'm just going to ride around like a cowboy, hee-haw, shooting off into the air."  For the following reasons, this Court concludes that Mr. Taylor's arguments lack merit.

{¶26}  Regarding Mr. Taylor's trial counsel's failure to object to the State delaying the dispositional hearing of the juvenile, this Court has already concluded that Mr. Taylor has failed to demonstrate any resulting prejudice.  Accordingly, Mr. Taylor cannot establish ineffective assistance in that regard.  *See Madrigal* at 389 ("A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other.").

{¶27}  Regarding Mr. Taylor's trial counsel's closing arguments, the Ohio Supreme Court has acknowledged that "[c]ounsel for both sides are afforded wide latitude during closing arguments." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 192.  It has also acknowledged that "[d]ebatable trial tactics generally do not constitute a deprivation of effective counsel." *Id.*

{¶28}  Mr. Taylor is correct in that his trial counsel discussed race relations, partisanship, and national instances of police misconduct that occurred during the COVID-19 pandemic during closings arguments.  He did so in the context of attempting to explain to the jury why Mr. Taylor, an African American, would have been motivated to run from a crashed vehicle and attempt to hide from the police in a wooded area despite not committing a crime.  This Court fails to see how Mr. Taylor's trial counsel's strategy in this regard was deficient, let alone deficient to the extent

that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

{¶29} Regarding Mr. Taylor's trial counsel's comment during closing arguments that the incident could have occurred by "some reckless teenager who's got a new fancy toy, I'm just going to ride around like a cowboy, hee-haw, shooting off into the air[,]" this Court's review of the record indicates the Mr. Taylor's trial counsel was not suggesting Mr. Taylor's guilt. When read as a whole, Mr. Taylor's trial counsel stated: "How do we know that this just wasn't some reckless teenager who's got a new fancy toy, I'm just going to ride around like a cowboy, hee-haw, shooting off into the air." Mr. Taylor's trial counsel then explained that the State did not present an expert witness as to the trajectory of the bullet and criticized the police officers' investigation. Viewing Mr. Taylor's trial counsel's closing argument as a whole, this Court concludes that Mr. Taylor's argument that his trial counsel improperly suggested his guilt lacks merit. Accordingly, Mr. Taylor has failed to establish that his trial counsel rendered a deficient performance in this regard. Mr. Taylor, therefore, cannot establish ineffective assistance. *Strickland*, 466 U.S. at 687; *Madrigal*, 87 Ohio St.3d at 389.

{¶30} In light of the foregoing, Mr. Taylor's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

COUNSEL'S MANY ERRORS, WHILE SOME MAY BE DEEMED HARMLESS, CUMULATIVELY DENIED DEFENDANT A FAIR TRIAL.

{¶31} In his fourth assignment of error, Mr. Taylor argues that cumulative error deprived him of a fair trial. This Court disagrees.

{¶32} This Court has explained the doctrine of cumulative error as follows:

Under the doctrine of cumulative error, "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial—court error does not individually constitute

cause for reversal." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 223. To succeed on a claim of cumulative error, a defendant must establish that there were multiple instances of trial court error, *State v. Stahl-Francisco*, 9th Dist. Medina No. 19CA0093-M, 2020-Ohio-5456, ¶ 17, and that he sustained prejudice as a result of those errors, *State v. Froman*, 162 Ohio St.3d 435, 2020-Ohio-4523, ¶ 156. If a defendant "'fail[s] to demonstrate any prejudice resulting from the errors he has alleged, he cannot demonstrate cumulative error.'" *State v. Straughan*, 9th Dist. Summit No. 29549, 2021-Ohio-1054, ¶ 68, quoting *In re F.B.*, 9th Dist. Summit Nos. 28960, 28985, 2019-Ohio-1738, ¶ 47. The Supreme Court has recognized that "'there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial.'" *State v. Hill*, 75 Ohio St.3d 195, 212 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-509 (1983).

(Alterations sic.) *State v. Yatson*, 9th Dist. Lorain No. 20CA011658, 2022-Ohio-2621, ¶ 75.

{¶33} Mr. Taylor argues that, in addition to the errors set forth in his third assignment of error regarding his trial counsel's deficient performance, his trial counsel committed a series of errors, including: (1) suggesting to the trial court that Mr. Taylor would be pleading guilty and, therefore, suggesting his guilt and removing his ability to have a bench trial; (2) "float[ing] the theory that [Mr.] Taylor was either the shooter or that he was complicit in the shooting[;]" and (3) failing to present the certified copy of the Admission during the State's case-in-chief by using it to cross-examine the officer who arrested the juvenile. The cumulative effect of these errors, Mr. Taylor argues, deprived him of a fair trial.

{¶34} While Mr. Taylor asserts that his trial counsel suggested his guilt to the trial court, this Court's review of the record reveals otherwise. During several pretrials, Mr. Taylor's counsel did note that he and the prosecutor were in negotiations to potentially "resolve" the case ahead of the trial date. In discussing the underlying facts at one of the pretrials, Mr. Taylor's trial counsel made clear that he was not "in any way representing * * * that [his] client has represented" that the facts as alleged by the State occurred. Despite Mr. Taylor's argument to the contrary, the record–when read as a whole–does not indicate that his trial counsel suggested his guilt to the trial court.

{¶35} Regarding Mr. Taylor's argument that his trial counsel "floated" the idea that he was the shooter or was complicit to the shooting, Mr. Taylor has not pointed this Court to the portion of the record that he relies upon to support this argument. *See* App.R. 16(A)(7) (requiring an appellant's brief to cite the "parts of the record on which appellant relies."). Notwithstanding, the record indicates that Mr. Taylor's trial counsel zealously advocated for Mr. Taylor throughout the pretrial process and trial; it does not indicate that his trial counsel simply conceded his guilt as Mr. Taylor's argument suggests. His argument, therefore, lacks merit.

{¶36} Regarding Mr. Taylor's trial counsel's failure to introduce a certified copy of the Admission, this Court has already determined that Mr. Taylor has failed to establish prejudice in that regard. His argument, therefore, lacks merit. *Straughan*, 2021-Ohio-1054, at ¶ 68, quoting *In re F.B.*, 2019-Ohio-1738, at ¶ 47 (providing that if a defendant "fail[s] to demonstrate any prejudice resulting from the errors he has alleged, he cannot demonstrate cumulative error.").

{¶37} Lastly, to the extent that Mr. Taylor relies upon his trial counsel's alleged errors as set forth in his third assignment of error, "a party may not incorporate the arguments contained in the other assignments of error to support a different assignment of error." *State ex rel. Midview Local School Dist. Bd. of Edn. v. Ohio School Facilities Comm.*, 9th Dist. Lorain No. 16CA010991, 2017-Ohio-6928, ¶ 29. Even if Mr. Taylor had properly developed an argument in this regard, this Court has already determined that Mr. Taylor's trial counsel did not render a deficient performance, and/or that he did not suffer any prejudice as a result of his trial counsel's alleged deficient performance. Mr. Taylor's argument, therefore, lacks merit. *See Straughan* at ¶ 68.

{¶38} In light of the foregoing, Mr. Taylor's fourth assignment of error is overruled.

III.

**{¶39}** Mr. Taylor's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

CARR, P. J.
STEVENSON, J.
CONCUR.

APPEARANCES:

JOHN KOPASAKIS, Attorney at Law, for Appellant.

J.D. TOMLINSON, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.