[Cite as *State v. Suggs*, 2024-Ohio-1961.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

JAHLIN SUGGS

    Appellant

C.A. Nos.     30896
                       30897

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    CR 21 12 4347
                   CR 22 01 0236(B)

DECISION AND JOURNAL ENTRY

Dated: May 22, 2024

FLAGG LANZINGER, Judge.

{¶1} Defendant-Appellant, Jahlin Suggs, appeals from two judgments of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} One afternoon in January 2022, gunfire erupted on Chittenden Street in Akron. At the time, two Akron Police Department officers were driving north on that street. The officers spotted a maroon car parked in the middle of the street. Four people were standing outside the car, one of whom they later identified as Suggs. Suggs was standing on the back passenger's side of the car holding a rifle. The officers saw him enter the car along with the three other people. As the officers reached the maroon car and activated their cruiser's overhead lights, someone else in the area began shooting. When the gunshots stopped, Suggs and another man jumped out of the

right rear passenger door of the maroon car and fled. One of the officers ran after them on foot. He eventually apprehended Suggs.

{¶3} When the police searched the maroon car, they found five firearms: two rifles and three handguns. They also found 23 spent casings from a rifle on the ground and 12 spent casings from two handguns. A house to the east of the maroon car sustained bullet damage, as did two cars parked nearby the house. The police spoke with people at the house and learned one of them had sustained a fresh graze wound from a bullet. The police found two spent casings on the porch of the house.

{¶4} In Criminal Case No. CR 2022-01-0236(B), Suggs was charged with improperly discharging a firearm at or into a habitation, discharging a firearm on or near prohibited premises (i.e., a public road), and improperly handling firearms in a motor vehicle. He also was charged with several firearm specifications, specifications for engaging in a drive-by shooting, and forfeiture specifications related to the confiscated firearms. The trial court later dismissed the drive-by shooting specifications.

{¶5} A jury found Suggs guilty on all counts. The trial court sentenced him to a total of eight to ten and a half years in prison.

{¶6} Suggs now appeals from his convictions and raises five assignments of error for review. To facilitate our review, we reorder several of his assignments of error.

II.

{¶7} Before turning to the merits of Suggs' assignments of error, we must address the second judgment from which he has appealed. Suggs was charged with improperly handling firearms in a motor vehicle in Criminal Case No. CR 2021-12-4347. That incident occurred about six weeks before the incident in Criminal Case No. CR 2022-01-0236(B). The trial court initially

consolidated the two cases for trial. On the day of trial, however, the court continued the trial in Criminal Case No. CR 2021-12-4347. Suggs ultimately pleaded guilty in that case. He then filed an appeal in that case (C.A. No. 30897) as well as an appeal in this case (C.A. No. 30896). At his request, this Court consolidated his two appeals for briefing, argument, and decision.

{¶8} The appellate brief Suggs has filed only addresses the judgment in Criminal Case No. CR 2022-01-0236(B). He has not assigned any errors regarding Criminal Case CR No. 2021-12-4347. This Court will not formulate an argument on his behalf. *See State v. Beverly*, 9th Dist. Summit No. 28627, 2019-Ohio-957, ¶ 6. Accordingly, the judgment in C.A. No. 30897 is affirmed. Our opinion only concerns the convictions in Criminal Case No. CR 2022-01-0236(B).

## ASSIGNMENT OF ERROR I

JAHLIN'S CONVICTIONS WERE NOT BASED UPON SUFFICIENT EVIDENCE AS A MATTER OF LAW[.]

{¶9} In his first assignment of error, Suggs argues his convictions are based on insufficient evidence. Specifically, he argues there was no evidence he knowingly aided and abetted another person in discharging a firearm. We disagree.

{¶10} Whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶11}** R.C. 2923.161 defines the offense of improperly discharging a firearm at or into a habitation. Relevant to this appeal, it forbids any person without a privilege from "knowingly * * * [d]ischarg[ing] a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual * * *." R.C. 2923.161(A)(1). "A person acts knowingly, regardless of purpose, when the person is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when [he] is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶12}** R.C. 2923.162 defines the offense of discharging a firearm on or near prohibited premises. Relevant to this appeal, it forbids any person from "[d]ischarg[ing] a firearm upon or over a public road or highway." R.C. 2923.162(A)(3).

**{¶13}** Finally, R.C. 2923.16 defines the offense of improperly handling firearms in a motor vehicle. Relevant to this appeal, it forbids any person from "knowingly transport[ing] or [having] a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." R.C. 2923.16(B).

**{¶14}** Complicity is governed by R.C. 2923.03. Relevant to this appeal, the statute prohibits any person "acting with the kind of culpability required for the commission of an offense" from "[a]id[ing] or abet[ting] another in committing the offense * * *." R.C. 2923.02(A)(2). "To support a conviction for complicity by aiding and abetting * * *, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. "Such intent may be inferred from the circumstances surrounding the crime," *id.* at syllabus, and "the presence, companionship, and

conduct of the defendant before and after the offense is committed." *In re T.K.*, 109 Ohio St.3d 512, 2006-Ohio-3056, ¶ 13.

{¶15} Detective Jeffrey Woolley testified that he heard gunshots as he and his supervisor were driving northbound on Chittenden Street. As his cruiser crested a hill, Detective Woolley saw a maroon car parked in the center of the street. The car was facing southbound such that its front end was facing toward his approaching cruiser. He observed four people standing outside the car and a plume of smoke hovering above the car. One person then entered the driver's seat, and a second person entered the front passenger seat. The other two people initially remained standing outside. Detective Woolley testified that those two people were standing on the passenger side of the car nearest the trunk. They were both holding rifles and were pointing the rifles toward the houses to the east (i.e., over the car). As the police cruiser approached, Detective Woolley saw those people climb into the right rear passenger door with their rifles.

{¶16} Detective Woolley parked his cruiser directly in front of the maroon car and activated his overhead lights. He then heard a second volley of gunshots. Although the source of those gunshots was unclear, he noted that they were not coming from inside the maroon car. He testified that, when the second volley of gunshots stopped, the right rear passenger door of the maroon car opened and the two people who had been holding the rifles fled. He chased after them on foot. The people ran together for a considerable distance before splitting apart to run around a house. Detective Woolley continued to chase one of the individuals and apprehended him shortly thereafter. Detective Woolley identified that individual as Suggs. He testified that Suggs was wearing a face mask when he apprehended him.

{¶17} Detective Woolley confirmed that he only heard two sets of gunshots that day: the initial volley he heard while driving northbound on Chittenden Street and the second volley he

heard before exiting his cruiser. He testified that the plume of smoke he saw hovering over the maroon car was consistent with multiple gunshots having been fired from that spot.

{¶18} Sergeant Patrick Dugan was riding as a passenger in Detective Woolley's cruiser when this incident occurred. He confirmed that they discovered a maroon car parked in the middle of Chittenden Street after Detective Woolley heard gunshots. Sergeant Dugan observed a haze in the air around the maroon car. He testified the haze was consistent with recent gunfire. He also detected the distinct smell of gunpowder in the air.

{¶19} Sergeant Dugan saw two people jump out of the right rear passenger door of the maroon car and flee. He testified that both people were dressed entirely in black. While Detective Woolley chased after the two people who fled, Sergeant Dugan approached the maroon car. He found one person in the driver's seat and a second person in the front passenger's seat. He testified that both people were wearing black face masks and body armor.

{¶20} Detective Daniel Gump documented the scene as part of the crime scene unit. He testified that a search of the maroon car uncovered a total of five firearms. The police found an RAK-47 rifle on the backseat, an Anderson AR-14 rifle on the backseat floorboard, a handgun wedged between the driver's seat and center console, a handgun in a lower center console storage area, and a handgun on the front passenger seat floorboard area. Detective Gump testified that the RAK-47 rifle was empty upon recovery. Meanwhile, the Anderson AR-14's magazine was loaded with ammunition. When Detective Gump removed that magazine to clear the weapon, a live round fell out of the rifle. The detective confirmed that was an unusual event. He testified that the event was consistent with a possible misfeed. He explained that a misfeed could result when a firearm fails to bring a fresh cartridge into the barrel following a discharge.

{¶21} Detective Gump testified that the police collected 23 rifle casings from the area around the maroon car as well as 12 casings from a 9mm handgun. The police discovered bullet damage to a nearby house to the east of the maroon car. They also discovered recent bullet damage on two separate cars parked near the house to the east of the maroon car.

{¶22} A forensic scientist from the firearms division at the Bureau of Criminal Identification compared the casings from the scene with the firearms recovered from the maroon car. He testified that all 23 rifle casings matched casings he fired from the AK-47 rifle. He also testified that he was able to match all 12 of the 9mm casings to two separate 9mm handguns the police recovered from the maroon car.

{¶23} Detective Walter Morris testified about two jail calls Suggs placed after the shooting. The first call took place the day after the shooting. During that call, Suggs told someone the police arrived on scene "when we was shooting." The second call took place three days after the shooting. During that call, Suggs responded to someone's question about why he and the other rear seat passenger did not dispose of their guns. He stated: "If we woulda got out with them b*tches, they woulda fapped us down." Detective Morris testified that he was familiar with the terminology Suggs employed. He testified that Suggs was "talking about the police would have shot them down if they would have been running with the guns in hand."

{¶24} Suggs argues that the State never proved he knowingly discharged a firearm, loaded a firearm, handed someone a firearm, or performed any other action to aid and abet another person in discharging a firearm. According to Suggs, the evidence only showed that shots were fired outside the maroon car, he was a passenger in the car, and there were firearms in the car. Thus, he argues, the State failed to meet its burden of production.

**{¶25}** Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State proved its case against Suggs beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus. The jury heard testimony that Suggs was holding a rifle when the police arrived and left it in the backseat of the maroon car when he fled on foot. Suggs was wearing all black clothing and a face mask. Likewise, the other occupants of the car wore all black clothing and face masks, and the driver and front seat passenger had on body armor. One of the rifles the police found in the backseat discharged 23 rounds in the area. The other rifle was loaded, and the live round that fell from it was circumstantial evidence of a possible misfeed. A rational trier of fact could have concluded that Suggs either fired the 23 rounds from the RAK-47 rifle, fired a round from the Anderson AR-14 rifle before experiencing a misfeed, or aided and abetted the other occupants of the car by brandishing the Anderson AR-14 rifle while they fired their weapons. Suggs has not shown that his convictions are based on insufficient evidence. Accordingly, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> JAHLIN'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

**{¶26}** In his second assignment of error, Suggs argues his convictions are against the manifest weight of the evidence. We disagree.

**{¶27}** When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "A reversal on this basis is reserved for the exceptional case in which the evidence

weighs heavily against the conviction." *State v. Croghan*, 9th Dist. Summit No. 29290, 2019-Ohio-3970, ¶ 26. This Court "will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, ¶ 25, quoting *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15.

{¶28} Suggs argues the jury lost its way by convicting him because there was "no evidence" he knew what was going to happen or aided another person in discharging a firearm. He reiterates that, at best, the evidence showed (1) people outside the maroon car fired shots, and (2) he was sitting in the maroon car with a rifle at his feet. He argues that he attempted to demonstrate other people were responsible for the shooting. Because the State failed to meet its burden of persuasion, Suggs argues, his convictions must be reversed.

{¶29} To the extent Suggs argues there was "no evidence" to support his convictions, his argument sounds in sufficiency rather than weight. *See State v. Yatson*, 9th Dist. Lorain No. 20CA011658, 2022-Ohio-2621, ¶ 69. Sufficiency tests the State's burden of production while manifest weight tests its burden of persuasion. *State v. Ross*, 9th Dist. Lorain No. 21CA011729, 2023-Ohio-1185, ¶ 10. Thus, manifest weight challenges concern the reliability or believability of the State's evidence, not its adequacy. *Id.* We have already determined that Suggs' convictions are based on sufficient evidence. *See* Discussion of Assignment of Error I, *supra*. We decline to revisit that issue. In reviewing Suggs' second assignment of error, we confine our review to the limited weight challenge he has presented; to wit: that the jury lost its way when it failed to conclude that other people were responsible for the shooting.

{¶30} Suggs relied on cross-examination at trial. During their respective cross-examinations, several officers admitted that at least one member of law enforcement responded to

the scene of the shooting in a face mask because it was cold that day. Defense counsel used that testimony to argue that Suggs wore a face mask for a legitimate reason. Both Detective Woolley and Sergeant Dugan admitted that they never saw anyone from the maroon car fire a weapon. Further, defense counsel was able to elicit testimony tending to show that someone at a house to the east of the maroon car shot at the maroon car. Sergeant Dugan admitted that he saw bullet holes in the maroon car after arresting its occupants. The police also found several shell casings on the porch of a house to the east of the maroon car. Detective Morris attempted to interview the people he found at that house, one of whom had a fresh graze wound from a bullet. He admitted the people were uncooperative. He also admitted that at least one of the occupants of the maroon car said someone at the house had fired at them. Finally, Detective Morris admitted that all four occupants of the maroon car were charged in connection with the shooting.

{¶31} Having reviewed the record, we cannot conclude that this is the exceptional case where the evidence weighs heavily against Suggs' convictions. *See Croghan*, 2019-Ohio-3970, at ¶ 26. The jury heard testimony that Detective Woolley saw Suggs wearing a face mask and holding a rifle when he arrived on scene. Of the two rifles the police found inside the car, one was used to fire 23 rounds and the other was loaded and had possibly experienced a misfeed. Even if no one saw Suggs fire one of the rifles, he said in his jail call that the police "pulled up when *we* was shooting." (Emphasis added.) He also fled from the scene when Detective Woolley attempted to execute a stop. *See State v. Nichols*, 9th Dist. Summit No. 24900, 2010-Ohio-5737, ¶ 11, quoting *State v. Taylor*, 78 Ohio St.3d 15, 27 (1997) ("It is an established principle of law that '[f]light from justice * * * may be indicative of a consciousness of guilt.'"). The jury was in the best position to judge the credibility of the witnesses and Suggs' claim that he was not actively involved in the shooting. *See State v. Steible*, 9th Dist. Lorain No. 21CA011787, 2023-Ohio-281, ¶ 20.

"This Court will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe the State's version of the events." *State v. Harris*, 9th Dist. Medina No. 23CA0012-M, 2024-Ohio-196, ¶ 19. Suggs has not shown this is the exceptional case where the evidence weighs heavily against his convictions. *See Otten*, 33 Ohio App.3d at 340. Accordingly, his second assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT IMPROPERLY EXCLUDED EVIDENCE FROM THE JURY.

{¶32} In his fourth assignment of error, Suggs argues the trial court abused its discretion by refusing to allow him to present three exhibits to the jury. Upon review, we reject his argument.

{¶33} "[A] trial court has broad discretion in the admission or exclusion of evidence and this Court will not disturb a trial court's ruling on the admission of evidence absent an abuse of discretion and material prejudice to the defendant." *State v. Mitchell*, 9th Dist. Medina No. 21CA0071-M, 2022-Ohio-3176, ¶ 30, quoting *Drew v. Marino*, 9th Dist. Summit No. 21458, 2004-Ohio-1071, ¶ 8. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶34} Suggs sought to introduce three exhibits at trial. Exhibit J was a dispositional order of the Juvenile Court. It showed that S.S., the other person who was holding a rifle when the police arrived, was adjudicated a serious youthful offender for carrying a concealed weapon, receiving stolen property, and improperly discharging a firearm at or into a habitation. Exhibits K and L were sentencing entries for J.M. He was present in the house to the east of the maroon car during the shooting and sustained a fresh graze wound from a bullet. The sentencing entries showed J.M. pleaded guilty to carrying a concealed weapon and improperly handling a firearm in a motor

vehicle. One of his offenses occurred five months before the shooting in this matter and the other occurred three days after the shooting. According to Suggs, Exhibits J, K, and L tended to show that S.S. was the one who fired the rifle in this matter, J.M. possessed a handgun, and J.M. fired his gun at the occupants of the maroon car.

{¶35} Even assuming the trial court abused its discretion when it excluded Exhibits J, K, and L, we cannot conclude that Suggs has demonstrated resulting, material prejudice. *See Mitchell* at ¶ 30, quoting *Drew* at ¶ 8. The jury heard testimony that both Suggs and another individual were holding rifles. One of those rifles discharged 23 rounds, and there was circumstantial evidence tending to show that the other loaded rifle experienced a misfeed. Even if S.S. admitted he improperly discharged a firearm, the jury reasonably could have concluded that Suggs also was guilty either as a principal offender or as an aider and abettor. *See State v. Taylor*, 9th Dist. Lorain No. 22CA011858, 2023-Ohio-3683, ¶ 12. Further, the fact that J.M. possessed a handgun at various points before and after the shooting is inapposite. The jury heard testimony that the police found shell casings on the porch of the house to the east of the maroon car. Thus, there was already evidence that someone at that house discharged a firearm. Suggs has not explained why it was necessary for him to identify that individual as J.M. At best, evidence tending to show J.M. possessed a gun was cumulative in nature. *See State v. Dawson*, 9th Dist. Summit No. 28311, 2017-Ohio-2833, ¶ 23. Because Suggs has not shown that the trial court's exclusion of Exhibits J, K, and L resulted in material prejudice to him, his fourth assignment of error is overruled.

ASSIGNMENT OF ERROR III

JAHLIN WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL[.]

**{¶36}** In his third assignment of error, Suggs argues that he received ineffective assistance of counsel because his attorney did not pursue a theory of self-defense or defense of others. For the following reasons, we reject his argument.

**{¶37}** "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prevail on a claim of ineffective assistance of counsel, an appellant must establish: (1) that his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[;]" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, an appellant must show that there existed a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different. *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

**{¶38}** According to Suggs, had his attorney raised a claim of self-defense or defense of others, there is a reasonable probability the trial court would have allowed him to introduce Exhibits J, K, and L at trial. *See* Discussion of Assignment of Error IV, *supra*. Suggs argues that evidence would have shown J.M. was known to carry a gun and was willing to discharge it.

**{¶39}** Even assuming defense counsel engaged in deficient performance by not arguing self-defense or defense of others, Suggs has not shown that there is a reasonable probability the error affected the outcome of his trial. *See Sowell* at ¶ 138. There was testimony that Suggs and the other three occupants of the maroon car were dressed entirely in black, were wearing face masks, and had five firearms at their disposal. There also was testimony that both the driver and front seat passenger were wearing body armor. The jury reasonably could have concluded that the

occupants of the car were prepared to use their firearms when they arrived on Chittenden Street. Moreover, Detective Woolley only heard two sets of gunfire: the initial volley he heard while driving northbound on Chittenden Street and the second volley he heard before exiting his cruiser. The smoke he and Sergeant Dugan observed hovering over the maroon car was already present when the second volley of shots occurred. Thus, the jury reasonably could have concluded that one or more individuals from the house to the east fired a gun at the maroon car after its occupants fired their guns. While the police found two casings on the porch of the house, they found a total of 35 casings on the street around the maroon car. The jury also heard testimony that Suggs fled from the police in the aftermath of the shooting. Based on these facts and circumstances, we cannot conclude that there is a reasonable probability that, but for defense counsel's failure to argue self-defense or defense of others, the jury would not have convicted Suggs. Upon review, Suggs has not met his burden of establishing ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687. His third assignment of error is overruled.

ASSIGNMENT OF ERROR V

THE TRIAL COURT IMPROPERLY GAVE A FLEEING JURY INSTRUCTION[.]

{¶40} In his fifth assignment of error, Suggs argues the trial court erred when it issued the jury a flight instruction. We reject his argument.

{¶41} "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus, citing Crim.R. 30(A). "[E]vidence of flight is admissible as it tends to show consciousness of guilt. * * * [A] jury instruction on flight is appropriate if there is sufficient evidence in the record to support the charge." *State v. Villa*, 9th Dist. Lorain No. 05CA008773, 2006-Ohio-4529, ¶ 29. *See also State*

*v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, ¶ 240 ("Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the requested instruction.").

{¶42} "This Court reviews a trial court's decision to give or not give jury instructions for an abuse of discretion under the particular facts and circumstances of the case." *State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 68. An abuse of discretion implies the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 217. When applying an abuse of discretion standard, a reviewing court may not simply substitute its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶43} Suggs argues the trial court abused its discretion when it issued the jury a flight instruction because the evidence showed he only ran to avoid being shot. He argues that at least one person in the house to the east of the maroon car was firing at him and the other occupants. He also notes that, in a jail call, he specifically expressed a concern he had about being shot by the police. He argues "[i]t is axiomatic that when one is in the middle of a barrage of gunfire, the urge to live and run is normal."

{¶44} Having reviewed the record, we cannot conclude that the trial court went so far as to abuse its discretion when it issued the jury a flight instruction. *See Calise* at ¶ 68. The trial court was not required to accept any alternative explanation Suggs might have offered for his behavior that day. The record reflects that he was standing outside the maroon car when the police arrived. At that point, no one was firing a gun. Suggs chose to enter the maroon car with the rifle he was carrying. He then fled the maroon car after the second volley of gunfire ended. He did not immediately stop when Detective Woolley chased him on foot. Rather, he and his companion ran for a considerable distance before the detective finally succeeded in apprehending him. During

the jail call he placed, Suggs did not say that he ran from the car to avoid getting shot.  He indicated that, to avoid getting shot, he and his companion left their rifles in the car when they ran.  Based on the evidence, the trial court reasonably could have concluded that the State produced sufficient evidence to warrant a flight instruction.  *See State v. Deel*, 9th Dist. Summit No. 30384, 2023-Ohio-2862, ¶ 30.  Accordingly, Suggs' fifth assignment of error is overruled.

## III.

**{¶45}**  Suggs' assignments of error are overruled.  The judgments of the Summit County Court of Common Pleas are affirmed.

Judgments affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JILL FLAGG LANZINGER
FOR THE COURT

SUTTON, P. J.
CARR, J.
CONCUR.


APPEARANCES:

WESLEY C. BUCHANAN, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.