DECISION AND JOURNAL ENTRY
{¶ 1} Appellant David Drew has appealed from a decision of the Summit County Court of Common Pleas. This Court reverses and remands for a new trial.
 I {¶ 2} On August 30, 2000, Leland Thompson filed suit against his adopted daughter, Mary Ann Marino, and her husband, Louis Marino (collectively "Appellees"). The complaint alleged the following. Mr. Thompson claimed that in 1980 his now deceased wife, Mary Thompson, was diagnosed with cancer. In anticipation of her adopted mother's death, Mary Ann and her husband approached Mr. Thompson and offered to move into his home, with promises that she and her husband would take care of Mrs. Thompson during the remainder of her life. Mr. Thompson alleged that Mary Ann and Louis also promised to take care of and provide companionship to him during the remainder of his life as well.
 {¶ 3} Mr. Thompson further alleged that in late 1990 or early 1991, Mary Ann, Louis and their son moved into his home, spending approximately $15,000 of Mr. Thompson's funds to remodel the basement of the home as their living quarters. In October 1995, Mrs. Thompson died and after her death, Mary Ann became an authorized signatory on Mr. Thompson's checking account. Mr. Thompson also claimed that on February 7, 1992, he and his wife deeded over their home located at 1810 Chatham Street, as part of the agreement that Mary Ann and Louis take care of Mr. Thompson and his ailing wife.
 {¶ 4} Mr. Thompson claimed that in October 1998, he discovered Mary Ann was using funds from his checking account to pay her personal expenses without his authorization. Mr. Thompson further contends that after he and his daughter quarreled, Mary Ann attempted to have Mr. Thompson removed from the residence located at 1810 Chatham Street. Mr. Thompson further maintained that instead of his leaving the residence, Mary Ann and her family absconded from his residence without his knowledge and have failed to contact him since that time. Mr. Thompson further alleged that in addition to the stolen account funds, Appellees took certain personal property that belonged to him (i.e., antique firearms, furniture, jewelry, china, silver, and other household belongings.)
 {¶ 5} In Mr. Thompson's amended complaint, he brought causes of action for conversion, fraud and misrepresentation, and breach of contract against Mary Ann and her husband Louis. While the lawsuit was pending, Mr. Thompson died and his attorney and the executor of his will, Appellant David Drew, was substituted as plaintiff pursuant to Civ.R. 25. The matter proceeded to a jury trial and at the close of Appellant's case, Appellees moved for a directed verdict. The trial court granted the directed verdict as to each cause of action brought by Appellant, as executor of the Estate of Leland R. Thompson.
 {¶ 6} Appellant has timely appealed, asserting three assignments of error. We have rearranged the assignments of error to facilitate review.
 II Assignment of Error Number Two
"The trial court's erroneous interpretation of ohio evidence Rule 804(b)(5)(a) and preclusion of testimony from the estate's executor about the existence of a contract caused appellant detriment and harm in the presentation of his respective causes of action."
 {¶ 7} In Appellant's second assignment of error, he has argued that the trial court erred when it prevented him from presenting testimony concerning what the decedent, Mr. Thompson, told Appellant before he died. This Court agrees.
 {¶ 8} As an initial matter, this Court notes that a trial court has broad discretion in the admission or exclusion of evidence and this Court will not disturb a trial court's ruling on the admission of evidence absent an abuse of discretion and material prejudice to the defendant. State v. Hymore (1967),9 Ohio St.2d 122, 128, certiorari denied (1968), 390 U.S. 1024,88 S.Ct. 1409, 20 L.Ed.2d 281. An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 9} Generally, hearsay is inadmissible at trial unless provided for by the Rules of Evidence. Evid.R. 802. One exception is found in Evid. R. 804(B)(5). This hearsay exception and the general rule of competency established by Evid.R. 601 abrogated R.C. 2317.03, which is commonly referred to as Ohio's "Dead Man's" statute. Johnson v. Porter (1984), 14 Ohio St.3d 58, syllabus. Evid.R. 804(B)(5) provides that a statement of a deceased person is not excluded by the hearsay rule where: "(a) the estate or personal representative of the decedent's estate * * * is a party; (b) the statement was made before the death * * *; (c) the statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent * * *." Evid.R. 804(B)(5); see, also, Bilikam v. Bilikam (1982),2 Ohio App.3d 300, 305 (stating that Evid.R. 804(B)(5) permits a decedent to "speak from the grave" and rebut an adverse party's testimony for the benefit of the decedent's representative). All three requirements of Evid. R. 804(B)(5) must be met in order for the hearsay to be admissible. Evid.R. 804(B)(5); Meadow WindHealth Care Ctr. v. McInnes (March 5, 2002), 5th Dist. No. 2001CA00320, 2002 Ohio App. LEXIS 1124, at *12. Furthermore, Evid.R. 804(B)(5) applies only to rebuttal testimony. Eberly v.A-P Controls, Inc. (1991), 61 Ohio St.3d 27, paragraph one of the syllabus.
 {¶ 10} At trial, Appellant's trial counsel attempted to question Appellant regarding what Mr. Thompson told him about the existence of a contract between Mary Ann and Mr. Thompson. Appellees' trial counsel objected to the testimony; the objection was sustained. Appellant made an oral motion to proffer the testimony, and he explained that he wanted Appellant to testify that "based upon his — the statements of what [Mr. Thompson] told him that he could say [Mr. Thompson] told him what the contract was, [Mr. Thompson] told him that he paid for everything at the house; that [Mary Ann and Louis] were supposed to take care of him but he was taking care of them; that any repairs to the house were made by [Mr. Thompson[.]" Trial counsel further argued:
"Under Evidence Rule 804(B)(5)(a), an executor of an estate is permitted to provide statements of a deceased when the executor is an actual party to the action, which [Appellant] is, and, number two, that testimony, that statement that [Appellant] wants to testify about was within the knowledge of the — was made by the decedent before his death and the testimony would be that it was — and it's for the limited purpose of rebutting an adverse party's testimony. To the contrary, [Mary Ann] has testified that she didn't have the contract and she didn't convert any property."
 {¶ 11} In response to Appellant's arguments, the trial court stated:
"Well, I've reviewed Rule 804 here, exceptions, and (B)(5), subsection (c) says `Statement by a deceased or incompetent person." Says, `The statement was made by a decedent or mentally incompetent person, where all the following apply: The statement is offered to rebut testimony by an adverse party on a matter within the knowledge of the decedent or incompetent person.'
"Now, my understanding of what you are offering to do with [Appellant's] testimony was to rebut [Mary Ann Marino's] denial that she entered into such a contract or that such a contract existed. And my concern is that it's a denial of a negative. When the party says no, this doesn't exist, you're offering to rebut that negative and thereby prove the truth of the statement in opposition to it. * * * You're offering the statement to prove the fact of making the contract and, apparently, the terms of the contract.
"* * *
"* * * You're not offering the statement to rebut a fact in evidence that [Mary Ann Marino] has testified to. You are offering it to rebut a negative. And I don't believe that that is it what is intended by rebuttal evidence in this kind of hearsay exception."
 {¶ 12} The trial court ruled on the evidentiary issue after exhibits were admitted and Appellees' trial counsel cross-examined Appellant. Relying on Yates v. Black (Dec. 7, 1988), 9th Dist. No. 13525, and specifically noting that this Court's decision in Yates appeared "to be inconsistent" with the holding in Bobko v. Sagen (1989), 61 Ohio App.3d 397, the trial court explained that:
"[B]ecause [Appellant is] not offering these statements defensively, you are offering them offensively to prove a fact necessary for your case in chief; in your case in chief. And it's not rebuttal evidence offered by the defense.
"And simply by calling an opposing party on cross-examination and having them deny, I don't believe transforms this evidence into rebuttal evidence as it's anticipated and addressed in Evidence Rule 804(B)(5). * * * [B]ased on the authority reviewed, this Court declines to revisit its ruling."
 {¶ 13} After the trial court granted Appellees' motion for a directed verdict and the jury was discharged, Appellant formally proffered the testimony excluded by the trial court. Appellant, in his capacity as executor of the Estate of Leland R. Thompson, testified that Mr. Thompson initially hired Appellant to represent him on a domestic violence charge, which arose as a result of the physical altercation that occurred between Mr. Thompson and Mary Ann. After representing Mr. Thompson in the criminal matter, he was then asked to provide services to Mr. Thompson on the instant matter. Appellant stated that Mr. Thompson indicated that:
"[T]here was a contract and, as a matter of fact, he might have even thought there was a written contract. There may be a written contract out there, but he did say that the contract was that he and Mary was going to sign over the house to Mary Ann and Louis in exchange for them taking care of * * * Mary Thompson and Leland Thompson for the rest of their lives. This was prompted because Mary was ill at the time."
 {¶ 14} When Appellant was asked "what was [Mr. Thompson's] expectation as to the type of care he was going to get[,]" Appellant responded:
"At the time the concern was more on Mary Thompson. I believe Mary Thompson had cancer at the time they entered into this contract. So that was the immediate concern. But [Mr. Thompson] had indicated that to me, that the contract was Mary and Leland would sign over the deed to the house. In return, they would take care of Mary Thompson for the rest of her life, which they knew was going to be a short period of time because she had already had cancer.
"* * *
"[Mary Ann] was supposed to do a number of things. She was — first of all, they had to fix up the house to allow them to move in. Leland had indicated that he paid for that out of his money, his checking account. He paid for that.
"They also indicated that — that had — Miss Marino, Mary Ann Marino, was going to provide comfort and care, write checks, pay for utilities, pay for the upkeep of the house, pay for the taxes, pay for the insurance, pay for everything. And, obviously, they didn't do any of that."
 {¶ 15} The statements Appellant intended to make regarding what Mr. Thompson purportedly told him would constitute statements made by an out-of-court declarant that were offered to prove the truth of the matter asserted. Such testimony would be barred by the hearsay rule unless Appellant's intended testimony could satisfy Evid.R. 804(B)(5).
 {¶ 16} Based on the record and the proffered testimony,[1] this Court finds that the trial court abused its discretion when it refused to allow Appellant to testify as to what the decedent told him before he expired. Unquestionably, the first two elements of the test set forth in Evid.R. 804(B)(5) has been fulfilled. There is no dispute that Appellant, acting in his capacity as the executor of the Estate of Leland R. Thompson, was a party in the proceedings below and that the statements he attempted to present during his case-in-chief were purportedly made by Mr. Thompson before he died. The only issue contested at trial was whether the evidence presented was used to rebut testimony by an adverse party.
 {¶ 17} Usually, Evid.R. 804(B)(5) statements cannot be presented during a plaintiff's case-in-chief. However, the statements of the decedent can be offered to rebut an adverse parties' testimony after an adverse party has testified as if on cross-examination. Bobko, 61 Ohio App.3d at 410; see, also,Modica v. Keith (Feb. 28, 1995), 8th Dist. No. 48649, 1985 Ohio App. LEXIS 5834, at *11. This Court in Yates expressed the same rule of law. In Yates, the executrix of the decedent's estate sought to introduce the decedent's videotape deposition and other out-of-court statements in her case-in-chief. However, the executrix did not attempt to admit the evidence in rebuttal as required by Evid.R. 804(B)(5); the executrix sought to introduce the evidence before the opposing party presented testimony that was against the decedent's interest. Because the evidence did not comply with the requirements set forth in Evid.R. 804(B)(5), this Court held that the trial court properly excluded the decedent's videotape deposition and other out-of-court statements. Yates, supra, at 6.
 {¶ 18} When the trial court relied on Yates in its decision to disallow Appellant's testimony, the trial court simply misunderstood our holding in Yates, where we stated: "The evidence permitted under [Evid.R. 804(B)(5)] is defensive rather than offensive." (Alterations added.) Yates, supra, at 5. The statement was intended to suggest that statements made by a decedent can "be introduced in rebuttal (allowing the decedent to `speak from the grave') in order to rebut testimony of a party who is permitted to testify under Evid. R. 601." Id. In other words, a representative of the decedent can only act in a "defensive" manner when the party opposing the decedent has made statements contrary to the interests of the decedent during cross-examination or on direct examination as if on cross. SeeModica, 1985 Ohio App. LEXIS 5834, at *11. Therefore, contrary to the trial court's statement that our holding in Yates was "inconsistent" with Bobko, this Court finds that both cases support the same legal principle.[2]
 {¶ 19} Here, Appellees were called during Appellant's case-in-chief. However, they were called as adverse parties and testified as if on cross-examination. Thus, we find that the testimony presented by Appellant was offered to rebut an adverse parties' testimony after an adverse party has testified as if on cross-examination, thereby satisfying the third element of the Evid.R. 804(B)(5) test. See Yates, supra, at 5; Bobko,61 Ohio App.3d at 410.
 {¶ 20} Based on the forgoing, we find that the trial court erred when it excluded the testimony proffered by Appellant because such evidence was admissible under Evid.R. 804(B)(5). Consequently, we find that Appellant's second assignment of error has merit.
 Assignment of Error Number One
"By not permitting appellant to present testimony of the value of the house at 1810 chatham street, the trial court committed reversible error effectively denying him the ability to present damages on the breach of contract claim."
 Assignment of Error Number Three
"Appellant had presented sufficient evidence regarding the claim of conversion and the trial court's directed verdict was legally erroneous."
 {¶ 21} In light of our disposition of Appellant's second assignment of error, we decline to address his first and third assignments of error. App.R. 12(A)(1)(c).
 III {¶ 22} Appellant's second assignment of error is sustained; we decline to address his first and third assignment of errors. The judgment of the trial court is reversed and the matter is remanded for a new trial.
Judgment reversed, and cause remanded.
Carr, P.J. and Batchelder, J., concur.
[1] This Court has previously held that in order for an appellate court to review the propriety of the exclusion of evidence, the party claiming prejudice must proffer into the record the substance of the excluded evidence. Nurse GriffinIns. Agency v. Erie Ins. Group (Nov. 7, 2001), 9th Dist. No. 20460, at 4; see, also, Evid. R. 103(A)(2). By proffering the excluded evidence, this Court is able to "determine whether or not the [ruling] of the trial court [was] prejudicial." (Emphasis sic.) Id., at 4, quoting Smith v. Rhodes (1903),68 Ohio St. 500, 505.
[2] This Court also notes that Evid.R. 804(B)(5) allows only a representative of a decedent, rather than a party opposing the decedent, to present out-of-court statements of the decedent at trial. See Bilikam, 2 Ohio App.3d at 305 (stating that "Evidence Rule 804(B)(5) is not intended to apply to the party opposing the decedent. Rather, it applies to the party substituted for the decedent.")