[Cite as *State v. Dorsey*, 2025-Ohio-1129.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. Nos.    2024CA0039-M |
| | 2024CA0040-M |
| Appellee | 2024CA0041-M |
| | 2024CA0042-M |
| v. | 2024CA0043-M |
| CHAD W. DORSEY | |
| Appellant | APPEAL FROM JUDGMENT ENTERED IN THE WADSWORTH MUNICIPAL COURT COUNTY OF MEDINA, OHIO CASE Nos.    CRB 2300568 |
| | CRB 2300581 |
| | CRB 2300600 |
| | CRB 2300601 |
| | CRB 2100351 |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2025

---

CARR, Judge.

**{¶1}** Appellant, Chad Dorsey, appeals the judgment of the Wadsworth Municipal Court. This Court affirms.

I.

**{¶2}** In 2021, Dorsey was convicted of one count of domestic violence in Case No. CRB2100351 in the Wadsworth Municipal Court. The victim was the mother of Dorsey's children, K.K. The trial court imposed a two-year term of community control. As a condition of community control, the trial court ordered Dorsey to comply with a no-contact order that

prohibited him from contacting K.K., other than when using the Our Family Wizard ("OFW") app to arrange visitations for their children.

{¶3}  In August 2021, the Medina County Domestic Relations Court issued a five-year domestic violence civil protection order ("the protection order") against Dorsey that named K.K. as a protected party.  The protection order specified that Dorsey could only communicate with K.K. by using the OFW app and, further, that those communications would be limited solely to matters pertaining to the children.

{¶4}  In October 2023, four separate cases were filed charging Dorsey with violating the protection order.  Dorsey was charged separately with three counts of telecommunications harassment.  Furthermore, on October 25, 2023, Dorsey's probation officer filed an affidavit stating that Dorsey violated the terms of community control in Case No. CRB2100351.  The probation officer averred that Dorsey had been charged with multiple criminal offenses and, further, that Dorsey had violated the no-contact order pertaining to K.K.  Dorsey pleaded not guilty to the charges against him and denied the community control violation.

{¶5}  The matter proceeded to a jury trial on the criminal charges.  The jury found Dorsey guilty of all four counts of violating a protection order.  The jury found Dorsey not guilty of the telecommunications harassment charges.  Prior to sentencing, the trial court held a hearing on the alleged community control violation.  At the close of the hearing, the trial court found that Dorsey violated the terms of community control.  In each of the four cases where Dorsey was found guilty of violating the protection order, the trial court imposed a 180-day jail sentence, 120 days of which was suspended in favor of a two-year term of community control.  The trial court ordered that the jail sentences were to be served concurrently.  With respect to the community control violation,

the trial court imposed a 28-day jail term and ordered that sentence to be served concurrently to Dorsey's other sentences.

{¶6} On appeal, Dorsey raises four assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED WHEN IT PROHIBITED DISCUSSION OF THE OPEN CIVIL PARENTAGE CASE WHICH WAS REFERENCED IN THE PROTECTION ORDER APPELLANT WAS ALLEGED TO HAVE VIOLATED AND ORDERS FROM WHICH COULD HAVE CHANGED THE TERMS.

{¶7} In his first assignment of error, Dorsey argues that the trial court abused its discretion when it prohibited him from eliciting testimony about the issuance of court orders in the custody case involving his children. This Court disagrees.

{¶8} A trial court enjoys broad discretion regarding the admission or exclusion of evidence and this Court will not overturn the trial court's ruling on an evidentiary matter absent an abuse of discretion and a showing of material prejudice. *Drew v. Marino*, 2004-Ohio-1071, ¶ 8 (9th Dist.). An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable in its judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶9} Dorsey was charged with four counts of violating a protection order pursuant to R.C. 2919.27(A)(1). The protection order prohibited Dorsey from initiating contact with K.K., other than to resolve matters relating to their children. Specifically, the protection order stated that "[Dorsey] may have parenting time as ordered in Medina Case No. 21PA0004. [Dorsey] shall only communicate with [K.K.] through Our Family Wizard, and solely relating to the Minor Children, until ordered otherwise in Medina Case No. 21PA0004."

{¶10} At trial, the State presented extensive evidence that Dorsey violated the terms of the protection order. The State's evidence included testimony from K.K., who provided details about the alleged violations on the four dates in question. On cross-examination of K.K., defense counsel inquired as to whether the court handling the custody case had issued an order that required K.K. to respond to messages on the OFW app within 24 hours. K.K. responded, "Not until recently." When defense counsel pressed the issue, K.K. indicated that there were no such court orders in place at the times relevant to the charges in this case. Defense counsel responded, "That wasn't my question. Now is there? Is there a rule that you have to check within twenty-four hours?" At that point, the State objected on the basis that the line of questioning was not relevant to the charges in this case. The trial court sustained the objection. Shortly thereafter, defense counsel again inquired as to whether subsequent orders had been issued in the custody case. The trial court sustained the objection on the basis of relevance.

{¶11} When Dorsey took the stand in his own defense, he testified about how his parenting time arrangement with K.K. had changed over time. Defense counsel asked Dorsey if there was "[p]resently" a parenting time schedule that had been established in the custody case. The trial court sustained an objection on the basis that the question was not relevant. Defense counsel then engaged in a line of questioning about the process by which Dorsey and K.K. make adjustments to the parenting time schedule. When defense counsel asked about the frequency of the adjustments, as well as whether K.K. was currently using the various features on the OFW app, the State again objected. The trial court sustained the objection on the basis that the line of questioning was irrelevant because it was not germane to the period of time which gave rise to the charges in this case. Thereafter, defense counsel asked Dorsey what he meant when he sent a message on the OFW app asking K.K. is she felt "above the rules and court orders in place?"

When Dorsey responded that court orders had been issued in multiple cases, the State objected on relevance grounds. The trial court sustained the objection.

{¶12} On appeal, Dorsey contends that the trial court abused its discretion when it sustained the State's objections to questions about the orders issued in the custody case. Dorsey suggests that the answers to those questions would have been both relevant and probative given that the protection order in question specifically referenced the custody case.

{¶13} Dorsey's argument is without merit. Evid.R. 103(A)(2) provides that "[e]rror may not be predicated upon a ruling which . . . excludes evidence unless a substantial right of the party is affected; and . . . the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked. Offer of proof is not necessary if evidence is excluded during cross-examination." Here, Dorsey did not take the necessary steps to proffer the substance of the testimony regarding the custody case and, consequently, the trial court was not afforded the opportunity to consider the testimony in its proper context. *See generally State v. Glick*, 2007-Ohio-4104, ¶ 12 (9th Dist.). Furthermore, to the extent a proffer was not necessary at certain points due to the fact that the line of questioning occurred on cross-examination, Dorsey has not demonstrated that the testimony was relevant. Evid.R. 402 provides, in pertinent part, that "[e]vidence which is not relevant is not admissible." Evid.R. 401 defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." A review of the trial transcript reveals that while Dorsey repeatedly inquired about the possible issuance of orders in the custody case, Dorsey failed to establish that any such orders were issued during the timeframe that was relevant to this case. Under these

circumstances, Dorsey has failed to demonstrate that the trial court's rulings were unreasonable, arbitrary, or unconscionable.

**{¶14}** The first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND FUNDAMENTAL DUE PROCESS WHEN [THE] TRIAL JUDGE LIMITED DEFENSE COUNSEL'S RIGHT OF EXAMINATION AND CROSS-EXAMINATION OF WITNESSES.

**{¶15}** In his second assignment of error, Dorsey argues that the trial court violated his right to a fair trial and his due process rights by the manner in which it handled a number of evidentiary rulings. This Court disagrees.

**{¶16}** The crux of Dorsey's argument is that the trial court interjected itself in the proceedings and made a series of "uneven and inconsistent" evidentiary rulings that served to negatively color the jury's view of the case. Dorsey highlights that the trial court sua sponte objected to defense counsel's use of leading questions during the direct examination of Dorsey. By contrast, Dorsey argues the trial court overruled defense counsel's objections to leading questions by the State during its re-direct examination of Officer Sipos. Dorsey further contends that while the trial court prevented defense counsel from examining witnesses regarding orders issued in the custody case, the trial court permitted the State to cross-examine Dorsey about the custody case.

**{¶17}** R.C. 2945.03 provides that "[t]he judge of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding the matters in issue." A trial judge must remain impartial and avoid making

comments which will improperly influence the jury when exercising his or her duty to control a criminal trial pursuant to R.C. 2945.03. *State v. Jackson*, 2015-Ohio-5096, ¶ 52 (9th Dist.).

> Generally, in determining whether a trial judge's remarks were prejudicial, the courts will adhere to the following rules: (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel.

*State v. Horton*, 2017-Ohio-9078, ¶ 12 (9th Dist.), quoting *State v. Wade*, 53 Ohio St.2d 182, 187 (1978), *vacated and remanded on other grounds*, *Wade v. Ohio*, 438 U.S. 911 (1978); *State v. McCarley*, 2006-Ohio-1176, ¶ 9 (9th Dist.).

{¶18} Officer Sipos was the final witness to testify on behalf of the State at trial. On direct examination, Officer Sipos testified regarding numerous exhibits that evidenced communications between Dorsey and K.K. While some of these exhibits related to the alleged violations of the protection order, others related to telecommunications harassment charges. The State directed Officer Sipos' attention to Exhibit E, which was an OFW message where Dorsey ended an exchange about adjusting parenting time by saying, "It is your choice to do this civil, or to spend more of your mommy and daddy's money." Officer Sipos testified that Dorsey's comment was "unnecessary." On cross-examination, defense counsel asked several questions aimed at drawing a distinction between unnecessary comments and comments that constituted telecommunications harassment. On re-direct examination, the State again directed Officer Sipos' attention to Exhibit E, and asked, "it's threatening court action, isn't it?" Officer Sipos responded in the affirmative. The State then asked, "that's kind of an ultimatum, isn't it?" Dorsey objected on the basis that the question was leading. The trial court overruled the objection. Officer Sipos testified that she thought the message was both unnecessary and demeaning.

**{¶19}** Thereafter, Dorsey took the stand in his own defense. The following exchange unfolded prior to the trial court cautioning defense counsel against the use of leading questions:

Q:     When you text, do you always write out a complete, entire line of thinking behind the test?

A:     No.

Q:     Do you always restate all the context you might be referring to in a text?

A:     No.

. . .

Q:     Do you sometimes use shortcuts and language and --

A:     Absolutely

Q:     - - expect the person to make an inference? Has that ever led to a misunderstanding in a text message conversation?

A:     It has.

Q:     Okay. And then you have to type out like a whole paragraph explaining what the misunderstanding was? Does that happen?

A:     Exactly how it plays out - -

. . .

Q:     So when you write messages on [OFW] using your phone, do you always write out your complete and entire line of thinking?

A:     No, I do not.

Q:     All right. Do you always reiterate the context and circumstances of the message concerns?

A:     No, I do not.

**{¶20}** At that point, the trial court stated, "Do you want to keep your questions open-ended on - - on direct?" Defense counsel agreed and then continued with the line of questioning.

**{¶21}** At a later point during Dorsey's testimony, the trial court sua sponte objected on the basis that defense counsel asked questions that were either speculative or misleading. With

respect to the latter objections, Dorsey states in his merit brief that "[t]he rulings would perhaps have been appropriate had the prosecutor objected, but it did not."

{¶22} Dorsey also points to the manner in which the trial court handled testimony regarding the custody case involving Dorsey and K.K.'s children. As noted in this Court's resolution of Dorsey's first assignment of error, the trial court sustained multiple objections on the basis the evidence about the custody case that Dorsey sought to introduce was not relevant. *See*, Discussion of Assignment of Error I, *supra*.

{¶23} The transcript reveals that, on cross-examination of Dorsey, the State asked a series of questions about the protection order's provision limiting communications between Dorsey and K.K. to the OFW app. In responding, Dorsey repeatedly mentioned that the protection order's directive also contained a reference to the custody case. When the State sought clarification that any such orders issued in the custody case were not pertinent to the charged offenses, Dorsey testified that he was not certain when the orders in the custody case had been issued but it was "within the last six to eight months[.]" When the State subsequently asked Dorsey if he was still prohibited from contacting K.K. outside the OFW app, Dorsey responded, "that's the intent, yes[.]" The State then asked Dorsey why he used his persona email to contact K.K. regarding the children. Dorsey responded that the "other order[]" permitted him to use email in emergency situations. At that point, the State indicated that it would pursue a different line of questioning based on the evidence before the court. Throughout this exchange, the only time the trial court intervened was when, in response to Dorsey attempting to redirect the discussion to the custody case, the trial court urged Dorsey to discuss "one [order] at a time so we make a good record."

{¶24} In light of the foregoing, we are not persuaded that the trial court's evidentiary rulings improperly influenced the jury. Evid.R. 611(C) prohibits the use of leading questions on

direct examination, although trial courts are afforded discretion in this area. *State v. Diar*, 2008-Ohio-6266, ¶ 149. While the trial court sua sponte objected several times during the direct examination of Dorsey, including to defense counsel's use of leading questions, Dorsey has not demonstrated that any of these rulings ran afoul of the Ohio Rules of Evidence. Assuming arguendo that the trial court improperly permitted the State to ask leading questions during its re-direct examination of Officer Sipos, we cannot say that these questions were prejudicial given that the contents of the OFW message was addressed at length during Officer Sipos' prior testimony, including on cross-examination. *Diar* at ¶ 170. Furthermore, contrary to Dorsey's assertion, the State did not seek to introduce evidence about the custody case. Instead, the State sought to focus its cross-examination of Dorsey on the terms of the protection order. In answering those questions, however, Dorsey repeatedly referenced the custody case. Under these circumstances, the fact that the trial court permitted the State to ask several follow-up questions aimed at underscoring the irrelevance of the custody case does not support Dorsey's contention that the trial court's rulings in this regard were uneven and inconsistent, and served to improperly influence the jury.

{¶25} The second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

APPELLANT'S CONVICTION FOR VIOLATING A TEMPORARY PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF ARTICLE IV, SECTION 3, OF THE OHIO CONSTITUTION.

{¶26} In his third assignment of error, Dorsey argues that his convictions for violating the protection order were against the manifest weight of the evidence. This Court disagrees.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id.*

{¶27} Dorsey was convicted of four counts of violating a protection order in violation of R.C. 2919.27(A)(1), which states, "[n]o person shall recklessly violate the terms of . . . [a] protection order issued or consent agreement approved pursuant to [R.C. 2919.26 or R.C. 3113.31.]" The complaints filed against Dorsey alleged that he engaged in conduct that violated the terms of the protection order issued pursuant to R.C. 3113.31 on November 19, 2022, January 29, 2023, September 26, 2023, and October 12, 2023.

{¶28} Officer Markley from the Wadsworth Police Department testified regarding the details of the protection order, which was introduced as an exhibit at trial. The protection order was issued pursuant to R.C. 3113.31 and was set to remain effective until July 29, 2026. While the terms of the protection order generally prohibited Dorsey from initiating contact with K.K., it further provided that "[Dorsey] may have parenting time as ordered in Medina Case No. 21PA0004. [Dorsey] shall only communicate with [K.K.] through Our Family Wizard, and solely relating to the Minor Children, until ordered otherwise in Medina Case No. 21PA0004."

{¶29} Officer Markley testified that K.K. contacted police to report that Dorsey had violated the protection order on October 12, 2023. Officer Markley learned that Dorsey had used his personal email account to contact K.K. regarding parenting time. In the email, which was introduced as an exhibit at trial, Dorsey asked whether the OFW app was working. K.K. responded that the OFW app was, in fact, working and she asked Dorsey to stop emailing her. When Dorsey suggested that K.K. was not communicating effectively on the OFW app, K.K. again responded,

"Stop emailing me." Dorsey then asked whether he should use an alternative form of communication other than the OFW app. During his testimony, Officer Markley explained that the terms of the protection order did not grant the parties the authority to modify its terms, absent a court order.

{¶30} K.K. provided testimony on behalf of the State. With respect to the October 12, 2023 email, K.K. testified that she felt compelled to notify police because Dorsey's decision to contact her via private email violated both the protection order as well as the no-contact order that was issued in Case No. CRB 2100351. K.K.'s testimony revealed that the October 12, 2023 incident was not the first time that Dorsey had used his personal email account to contact her. Several weeks earlier, on September 26, 2023, Dorsey sent multiple emails to K.K.'s personal email account. In those emails, which were introduced as exhibits, Dorsey urged K.K. to check for messages on the OFW app.

{¶31} K.K. also provided testimony about multiple occasions where Dorsey sent her messages on the OFW app that were unrelated to scheduling visitations for the children. On November 19, 2022, Dorsey sent K.K. several OFW messages chastising her for being immature. After typing "Standards" in the subject line, Dorsey sent K.K. a series of messages wherein he criticized her for contacting law enforcement. Dorsey suggested that the police laughed at K.K. when Dorsey notified them about her behavior. Dorsey further indicated that K.K. needed to behave more like an adult. Thereafter, Dorsey sent a separate message expressing frustration that K.K. did not respond to his earlier messages. Similarly, Dorsey sent K.K. an OFW message on January 29, 2023, that had nothing to do with their children. In the January 29, 2023 message, Dorsey indicated that he had been going through some personal items and that he had discovered an old note from K.K. Dorsey attached a photograph of the note and asked K.K. if she wanted

him to return the note. At trial, K.K. explained that she did not respond to these messages because they did not pertain to arranging parenting time.

{¶32} Officer Sipos provided additional testimony on behalf of the State. In the summer of 2023, Officer Sipos performed a welfare check at K.K.'s residence after Dorsey reported that the children might be in danger. Although the oldest son was upset that K.K.'s boyfriend had raised his voice, Officer Sipos did not see any evidence that there were any concerns with the children's safety or the environment in the home. At that time, K.K. informed Officer Sipos of several of the aforementioned communications that K.K. believed to be in violation of the protection order.

{¶33} Dorsey testified in his own defense at trial. Dorsey acknowledged that there were multiple occasions where he attempted to contact K.K. using modes of communication other than the OFW app. In defense of these actions, Dorsey suggested that K.K. often failed to check her messages on the OFW app. Dorsey further testified that K.K. had failed to show up to exchange the children on a number of occasions. With respect to the OFW messages that Dorsey sent K.K. on November 19, 2022, which appeared to be critical of K.K., Dorsey testified that he believed that message did relate to parenting time because K.K.'s failure to communicate effectively was harmful to the children. In regard to the January 29, 2023 message, where Dorsey offered to return the note to K.K., Dorsey testified that the message was not intended to harass K.K. Dorsey suggested that K.K. had made an effort to recover certain items after they broke up and he thought that she might prefer to have possession of the note.

{¶34} In support of his manifest weight challenge, Dorsey argues that all of the messages that he sent on the OFW app were, in fact, related to parenting. Dorsey maintains that his criticism of K.K. for involving law enforcement stemmed from a concern for providing stability in the lives

of his children. With respect to the private emails that Dorsey sent K.K., he argues that those communications were consistent with the terms of the protection order. Dorsey suggests that he would have been able to demonstrate that the emails were not problematic if the trial court had permitted him to elicit additional testimony about the custody case.

{¶35} A thorough review of the evidence presented at trial reveals that this is not the exceptional case where the trier of fact clearly lost its way. The protection order provided that Dorsey could only contact K.K. on the OFW app and only regarding matters pertaining to their children. The State presented evidence of two instances where Dorsey sent messages on the OFW app that were completely unrelated to the children. While Dorsey testified that he hoped these messages would ultimately lead to a better environment for the children, this Court will not overturn the trial court's verdict on a manifest weight challenge simply because the jury chose to believe the testimony of certain witnesses and not others. *State v. Ross*, 2013-Ohio-522, ¶ 16 (9th Dist.), citing *State v. Crowe*, 2005-Ohio-4082, ¶ 22 (9th Dist.). The State also presented evidence that Dorsey eschewed the OFW app on two occasions and instead contacted K.K. via email. To the extent that Dorsey was frustrated with K.K.'s use of the OFW app, the protection order did not provide for an exception where Dorsey was permitted to contact K.K. by way of email, meaning that his emails on September 26, 2023, and October 12, 2023, violated the terms of the protection order. While Dorsey suggests that the trial court improperly prohibited him from presenting evidence that would have demonstrated the validity of these emails, this Court has already rejected those arguments in resolving Dorsey's first and second assignments of error. *See* Discussion of Assignments of Error I & II, *supra*. Accordingly, Dorsey cannot prevail on his manifest weight claim as he has not demonstrated that his convictions resulted in a manifest miscarriage of justice.

{¶36} The third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

THE FINDING OF A PROBATION VIOLATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED DURING THE PROBATION VIOLATION HEARING.

{¶37} In his fourth assignment of error, Dorsey argues that the trial court's finding that he violated the terms of his community control sanction was against the manifest weight of the evidence. This Court disagrees.

{¶38} Just prior to sentencing, the trial court held a hearing on the alleged community control violation. At the outset of the hearing, Dorsey moved to postpone the hearing on the grounds that he intended to appeal his criminal convictions and that the community control violations were predicated on "the subject matter of the [underlying] convictions[.]" The trial court denied the motion.

{¶39} The sole witness to testify at the hearing was Kimberly Whited, who serves as the chief probation officer at the Wadsworth Municipal Court. Whited has been supervising Dorsey since the time he was sentenced in Case No. 21CRB00351 in November 2021. Whited testified that she filed the affidavit of violation in October 2023 because Dorsey had been charged with multiple counts of violating the protection order pertaining to K.K. and, further, that Dorsey had violated the no-contact order that was linked to his probation in Case No. 21CRB00351. The State introduced a copy of the no-contact order and asked the trial court to take judicial notice of the order. The trial court permitted the State to engage in a line of questions about the requirements of the no-contact order. Whited testified that Dorsey had violated the no-contact order when he "contacted the victim through email outside the [OFW] app and, also, addressed things within his communications that were not specifically linked to the visitation with the children[.]" Whited further testified that the probation notes, which were signed by Dorsey, required him to obey all

local and state laws. At that time, the State asked the trial court to take judicial notice of the judgment entries evidencing Dorsey's convictions for violating the protection order. At the close of her testimony, Whited explained that her core responsibility in supervising Dorsey was to ensure that he complied with the court-ordered requirements pertaining to his communications with K.K., and Dorsey failed to do so.

{¶40} Dorsey declined to cross-examine Whited and he offered no evidence at the hearing. Dorsey further expressed no objection to the admission of the exhibits introduced during Whited's testimony. With respect to the judgment entries of conviction, the trial court noted, "[t]hose are actually the charges related to these court proceedings." During closing arguments, the State argued that Dorsey's conduct constituted a violation of community control. In turn, Dorsey argued that the violation hearing was a completely separate proceeding from the trial and that the State failed to present any substantive evidence demonstrating that Dorsey engaged in communications with K.K. that violated the community control terms. The trial court found that Dorsey violated community control based on the fact that he violated the terms of the no-contact order and he committed multiple violations of state law.

{¶41} On appeal, Dorsey raises a manifest weight challenge on the basis that the State declined to call K.K. as a witness and relied solely on the testimony of the probation officer. In addition to arguing that the probation officer's testimony lacked details about the underlying incidents; Dorsey contends that the State's attempt to have the trial court take judicial notice of the judgment entries of conviction was not proper under R.C. 2945.75(B)(1). Dorsey maintains that, absent proof of those convictions, the State failed to demonstrate that Dorsey violated the terms of community control.

**{¶42}** Dorsey's argument is without merit. Although Dorsey now challenges the manner in which the State sought to introduce the judgment entries of conviction, we note that the judgment entries were admitted without objection at the hearing. We are further mindful that while community control revocation hearings must comport with certain due process protections, the Ohio Rules of Evidence are generally not applicable. *See* Evid.R. 101(D)(3); *Lodi v. Moore*, 1998 WL 801935, *1 (9th Dist. Nov. 18, 1998). Moreover, the probation officer offered testimony that Dorsey (1) contacted K.K. using personal email instead of the OFW app; and (2) contacted K.K. to discuss matters that were unrelated to their children. The probation officer testified that both of these actions violated the language of the no-contact order issued in Case No. CRB2100351. Dorsey did not present any evidence to contradict this testimony. Accordingly, Dorsey has not demonstrated that this is the exceptional case where the evidence weighed heavily against the trial court's finding that he violated community control.

**{¶43}** The fourth assignment of error is overruled.

### III.

**{¶44}** Dorsey's assignments of error are overruled. The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

FLAGG LANZINGER, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

MATTHEW D. SIMPSON, Attorney at Law, for Appellant.

JARED C. ROBERTS, Prosecuting Attorney, for Appellee.