**[Cite as *State v. Anderson*, 2025-Ohio-2975.]**

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 31121 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TROY L. ANDERSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR-2023-11-3844 |

DECISION AND JOURNAL ENTRY

Dated: August 20, 2025

CARR, Judge.

{¶1} Appellant, Troy Anderson, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} This matter arises out of events that transpired after S.A. obtained a civil stalking protection order against Anderson in 2022. The Summit County Grand Jury indicted Anderson on one count of violating a protection order in violation of R.C. 2919.27(A)(1)/(B)(4), a felony of the third degree. The indictment specified that Anderson violated the protection order while committing a felony offense. Anderson was also charged with one count of menacing by stalking in violation of R.C. 2903.211(A)(1)/(B)(2), a felony of the fourth degree. After pleading not guilty to the charges at arraignment, the matter proceeded to a jury trial. The jury found Anderson guilty of violating a protection order as charged in count one but not guilty of menacing by stalking as

charged in count two. The trial court imposed a 30-month prison sentence and ordered that the sentence run concurrently with Anderson's sentences in two separate criminal cases.

{¶3} On appeal, Anderson raises one assignment of error.

II.

### ASSIGNMENT OF ERROR

APPELLANT'S CONVICTION FOR VIOLATING A PROTECTION ORDER, IN VIOLATION OF [R.C.] 2919.[2]7(A)(1) AND [R.C.] 2919.24(B)(4) . . . , AND ITS FINDING THAT THE OFFENSE WAS COMMITTED DURING THE COURSE OF AN UNDERLYING PREDICATE FELONY FOR WHICH THE JURY FOUND APPELLANT NOT GUILTY, IS UNCONSTITUTIONAL AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTIONS TEN AND SIXTEEN OF THE OHIO CONSTITUTION.

{¶4} In his sole assignment of error, Anderson argues that his conviction for violating a protection order was not supported by sufficient evidence and was against the weight of the evidence. Anderson's core assertion is that he could not be convicted of a third-degree felony violation of the protection order because the jury found him not guilty of the predicate felony offense of menacing by stalking.

### Sufficiency Challenge

{¶5} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶6}    Anderson was convicted of one count of violating a protection order in violation of R.C. 2919.27(A)(1)/(B)(4).  R.C. 2919.27(A)(1) states that "[n]o person shall recklessly violate the terms of . . . [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code[.]"  With respect to the degree of the offense, R.C. 2919.27(B)(4) provides that "[i]f the offender violates a protection order or consent agreement while committing a felony offense, violating a protection order is a felony of the third degree."

{¶7}    The offense of menacing by stalking is defined in R.C. 2903.211(A)(1), which states:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person . . . or cause mental distress to the other person. . . [.]  In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person . . . or mental distress to the other person or . . . , the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

R.C. 2902.211(D)(2) indicates that "[m]ental distress" means any of the following:

> (a) Any mental illness or condition that involves some temporary substantial incapacity;
>
> (b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

R.C. 2903.211(B)(2)(a) provides that menacing by stalking is a felony of the fourth degree when "[t]he offender previously has been convicted of or pleaded guilty to a violation of this section or a violation of section 2911.211 of the Revised Code."

Background

{¶8} At trial, the State presented evidence in support of the following narrative. S.A. is a deputy sheriff who is employed by the Summit County Sheriff's Office. At a time when S.A. was going through a divorce, she needed assistance with several projects at her house. A friend connected S.A. with Anderson, who does handywork. Anderson began helping S.A. with the various projects. S.A. and Anderson became friends and eventually the relationship became sexual in nature, although they agreed that there would be "no strings attached[.]" S.A. was the subject of an investigation due to a department policy that prohibits deputy sheriffs from fraternizing with individuals with felony records. S.A. was advised to stop seeing Anderson.

{¶9} The relationship became turbulent when S.A. informed Anderson that she no longer wanted to see him. At trial, S.A. testified that "[Anderson] started calling me constantly, vandalizing my house, coming over unannounced, following me, stalking me, setting up cameras in my house, [and] things like that." S.A. informed both the Sheriff's Office and the Akron Police Department. S.A. also obtained a civil stalking protection order against Anderson. The civil stalking protection order, which was introduced as an exhibit at trial, was journalized on July 27, 2022, and was ordered to remain in effect until July 19, 2027. The protection order prohibited Anderson from initiating contact with S.A., including by way of telephone calls, text messages, and emails. The protection order further specified that Anderson was prohibited from eliciting another person to contact S.A. The State presented evidence that Anderson was served with the protection order.

{¶10} The State presented evidence that Anderson made repeated attempts to revive his relationship with S.A. in November 2023. Anderson called S.A. on November 14, 2023, but S.A. immediately hung up the phone when she realized it was Anderson. When Anderson called back

and insisted that they needed to talk, S.A. told Anderson that he was not supposed to be in contact her and she again hung up. Around that time, S.A. was contacted by several friends who informed her that there were "inappropriate pictures placed on Facebook" and that S.A. assumed Anderson was responsible for those posts.

{¶11} The State also presented evidence of two instances where Anderson used intermediaries to send a message to S.A. During the time when Anderson and S.A. were seeing each other, Anderson referred S.A. to his cousin, T.A., who works as a nail technician at Hollywood Nails. S.A. began utilizing T.A.'s services on a monthly basis. On one occasion, Anderson came to the salon during one of S.A.'s appointments but S.A. was not interested in speaking to Anderson. By November 2023, however, S.A. was no longer utilizing T.A.'s services and T.A. had not seen S.A. in several months. Around that time, Anderson came to the salon and asked T.A. for a favor. Specifically, Anderson asked T.A. to tell S.A. that Anderson loved her. While T.A. was initially hesitant, she ultimately called S.A. and relayed the message. Shortly thereafter, several detectives came to the salon and questioned T.A. about her encounter with Anderson.

{¶12} The second incident involved a mutual friend of Anderson and S.A., G.A. G.A. teaches a weekly dance class at a skating rink in Wickliffe. S.A. and Anderson were regulars at the dance class when they were seeing each other. In November 2023, Anderson approached G.A. at the skating rink and asked her to communicate a message on Anderson's behalf. Anderson told G.A. that he wanted S.A. to know that he loved her, that he did not have any ill will toward her, and that he wanted to know the next time that S.A. would be at the skating rink. S.A. was not attending the dance class at that time, but she was texting with G.A. on a regular basis. When G.A.

conveyed Anderson's message to S.A., S.A. indicated that Anderson should not have attempted to contact her. S.A. then arranged for a detective to call G.A. to make a report of the incident.

{¶13} S.A. testified that Anderson's repeated attempts to contact her caused a great deal of mental distress. In addition to experiencing persistent stress, S.A. experienced trouble sleeping. S.A. further testified that, given her history with Anderson, she began carrying her firearm on her at all times in order to protect herself. Detective Caldwell from the Sheriff's Office explained some of the background information that provided the context for S.A.'s mental distress. Detective Caldwell's investigation revealed that the protection order became necessary because Anderson began lingering around S.A.'s home and committing acts of vandalism. Anderson disregarded S.A.'s pleas to leave her alone and, on one occasion, Anderson tossed a brick through the window of S.A.'s car while she was leaving her home. Detective Caldwell underscored the seriousness of Anderson's conduct because "people don't stalk somebody because they want to be friends with them. They want to have control over them. . . . They don't want the other person to do anything that goes against their wishes." Detective Caldwell further testified that Anderson had demonstrated that he would do things "under the cover of darkness." During Detective Caldwell's testimony, the State introduced an exhibit demonstrating that Anderson's prior conduct resulted in a conviction for menacing by stalking.

{¶14} With respect to Anderson's subsequent conduct that gave rise to the instant case, S.A. reported to Detective Caldwell that she was being followed home from her job at the Summit County Jail. It was around that time that Anderson placed the phone calls to S.A. Detective Caldwell subsequently learned that those calls were made from a burner phone. During that same timeframe, S.A. reported that Anderson had used T.A. and G.A. to relay messages, and Detective Caldwell further learned about the inappropriate Facebook posts. Detective Caldwell contacted

both T.A. and G.A. about their interactions with Anderson. Because Anderson made repeated attempts to contact S.A. in November 2023, Detective Caldwell arranged for a phone call where S.A. called Anderson and agreed to meet at Hardesty Park in Akron. When Anderson arrived at the park, several detectives approached him and took him into custody.

{¶15} During jury instructions, the trial court informed the jury that in addition to being charged with violating a protection order in count one of the indictment, the State also alleged that Anderson did so while committing a felony offense. The trial court specified that "[t]he State alleges that the defendant violated the protection order while he was committing the felony offense of menacing by stalking." After noting that it would define the elements of menacing by stalking when addressing the second count in the indictment, the trial court then said, "You will use the elements of menacing by stalking explained in Count Two to determine whether the defendant violated the protection order while committing a felony offense."

{¶16} The jury subsequently found Anderson guilty of violating a protection order with a finding that Anderson "did violate the protection order while he was committing a felony offense." The jury also found Anderson not guilty of menacing by stalking as charged in count two of the indictment.

Discussion

{¶17} On appeal, Anderson maintains that the jury verdicts in this case reveal that his third-degree felony conviction for violating a protection order was not supported by sufficient evidence. Although Anderson concedes that "inconsistent verdicts do not necessarily invalidate a conviction[,]" he notes that the jury instruction regarding the predicate felony for violating a protection order pertained solely to the offense of menacing by stalking, which was the same charge contained in the second count in the indictment. According to Anderson, the fact that the

jury found him not guilty of menacing by stalking as charged in count two means that the State failed to prove its case with respect to the felony-level charge of violating a protection order contained in count one. Anderson points to the Sixth District's decision in *State v. Reyes*, 2005-Ohio-2100 (6th Dist.), in support of the proposition that a conviction must be reversed when the jury verdicts make clear that the State failed to prove a predicate offense beyond a reasonable doubt. *Id*. at ¶ 34-35.

{¶18} As an initial matter, Anderson's argument regarding the jury verdicts is without merit. The Supreme Court of the United States has observed that "[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." (Internal quotations and citations omitted.) *United States v. Powell*, 469 U.S. 57, 62 (1984). The *Powell* Court further observed as follows:

> The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. . . . [I]nconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense— should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense.

*Id*. at 65. The Supreme Court of Ohio cited extensively to *Powell* in its plurality opinion in *State v. Gardner*, 2008-Ohio-2787, ¶ 81, where it stated that "a verdict that convicts a defendant of one crime and acquits him of another, when the first crime requires proof of the second, may not be disturbed merely because the two findings are irreconcilable." This Court has similarly recognized that "a conviction on a compound offense may stand although a jury acquits on its predicate offense." *State v. Allen*, 2017-Ohio-2831, ¶ 24 (9th Dist.). Accordingly, Anderson's argument that the verdict on menacing by stalking contained in count two necessitates reversal of his conviction for a felony-level violation of a protection order as charged in count one is without

merit. Furthermore, Anderson's reliance on the Sixth District's decision in *Reyes* is misplaced. In addition to the fact that *Reyes* was decided prior to the Ohio Supreme Court's decision in *Gardner*, we note that *Reyes* is distinguishable in that it involved a prosecution for engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), which entails an entirely different statutory framework than violating a protection order under R.C. 2919.27(A)(1)/(B)(4). *Reyes* at ¶ 2.

{¶19} Furthermore, a review of the record reveals that the State presented sufficient evidence of Anderson's conviction. The civil stalking protection order at issue in this case prohibited Anderson from initiating contact with S.A., as well as using others to initiate contact with S.A. The State presented ample evidence that Anderson violated the terms of the protection order on numerous occasions in November 2023. In regard to the underlying felony offense, which elevated the charge to a third-degree felony, the State presented evidence that supported the jury's finding that Anderson violated the protection order while committing the offense of menacing by stalking. Despite having a prior conviction for menacing by stalking where S.A. was the victim, Anderson continued his pattern of manipulative behavior toward S.A. in November 2023. In addition to the mysterious Facebook messages, Anderson made multiple telephone calls to S.A. Moreover, on two occasions Anderson reached out to the women in S.A.'s social circle to convey messages to S.A. This Court has recognized that while mere stress or annoyance does not constitute mental distress, incapacity will be deemed substantial when it "has a significant impact on the victim's daily life." *J.E. v. M.D.*, 2024-Ohio-5978, ¶ 20 (9th Dist.). Further, "[m]ental distress does not need to be incapacitating or debilitating, and expert testimony is not needed to prove it." *State v. Crawl*, 2025-Ohio-2799, ¶ 13. In addition to persistent sleep issues and continuous distress, S.A. testified that she began carrying her weapon with her at all times to protect herself from Anderson. This evidence, when construed in the light most favorable to the

State, was sufficient to demonstrate that Anderson violated the protection order while committing the offense of menacing by stalking.

{¶20} Anderson's sufficiency challenge is without merit.

**Manifest Weight Challenge**

{¶21} Anderson further maintains that his conviction was against the weight of the evidence.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id*.

{¶22} A review of Anderson's brief reveals that he has not articulated a manifest weight argument apart from his principal assertion that the jury verdicts demonstrate that the State failed to prove its case. *See* App.R. 12(A)(2). To the extent that Anderson's manifest weight challenge is predicated on the notion that the testimony regarding S.A.'s mental distress was not credible, it is well-settled that this Court will not overturn a conviction on manifest weight grounds simply because the jury found the State's witnesses to be credible. *See State v. Crowe*, 2005-Ohio-4082, ¶ 22 (9th Dist.); *State v. Dorsey*, 2025-Ohio-1129, ¶ 35 (9th Dist.). It follows that Anderson has failed to demonstrate that this is the exceptional case where the trier of fact clearly lost its way.

{¶23} Anderson's assignment of error is overruled.

III.

**{¶24}** Anderson's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

STEVENSON, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

ADAM M. VANHO, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.